UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES E. BENTLEY,

    Petitioner,                                                         Civil Action. No. 16-CV-13706

v.

                                                                           HONORABLE MARK A. GOLDSMITH

MELINDA BRAMAN,[1]

    Respondent.
_____/

**OPINION & ORDER
(1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DECLINING
TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO
APPEAL IN FORMA PAUPERIS**

Charles E. Bentley ("Petitioner"), confined at the Parnall Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for two counts of first-degree criminal sexual conduct (CSC), Mich. Comp. Laws § 750.520b(1)(b)(ii) (sexual penetration of victim at least 13 but less than 16 years of age and related to actor), and one count of second-degree CSC, Mich. Comp. Laws § 750.520c(1)(b)(ii) (sexual contact with victim at least 13 but less than 16 years of age and related to actor). He was sentenced to 10 to 40 years' imprisonment for each first-degree CSC conviction, and 10 to 15 years' imprisonment for the second-degree CSC conviction. For the reasons stated below, the petition for a writ of habeas corpus is denied.

**I. BACKGROUND**

Petitioner was convicted following a jury trial in the Macomb County Circuit Court. The complainant, SL, testified that she knew Petitioner, who was her grandmother's brother, her entire

---

[1] The Court amends the caption to reflect the current warden of Petitioner's incarceration.

1

life. Petitioner moved back to Michigan from Kentucky following his divorce in 2007. He moved in with SL's grandmother, where SL lived. 7/16/2009 Tr., Ex. 6 to Rule 5 Materials, at 66-67 (Dkt. 6-6). SL was 14 years old at the time. Id. at 60. On January 13 or 14, SL went with Petitioner in his truck to Walgreens to get some Robitussin. After stealing the Robitussin, SL went back to the truck. SL testified that while driving, Petitioner put his right hand over the front console and was touching her vagina both over and under her clothing. SL further testified that Petitioner had touched her for over a year before he raped her. He touched her chest, buttocks, and vagina. Petitioner touched SL when she visited him in Kentucky in 2007 and when he returned to Michigan in 2008. Id. at 67-73. SL testified that Petitioner put his fingers inside her vagina and over it. She also testified that she told her cousin Cheyann every time he touched her, but did not tell anyone else because Petitioner gave her his Ultram pills (pain medication), marijuana, and alcohol, and took her to Walgreens to steal Robitussin. Id. at 74-75. SL testified that she took 25 Robitussin pills (one full bottle and 5 from the second bottle), smoked marijuana, and was finishing her cigarette when she blacked out. SL further testified that she was coming in and out of consciousness and realized she was in the back seat of the truck and Petitioner was on top of her and she could feel his penis inside her vagina. Id. at 80-86.

Petitioner's conviction was affirmed on appeal. People v. Bentley, No. 310779, 2013 WL 5857796 (Mich. Ct. App. Oct. 31, 2013), lv. den. 843 N.W.2d 909 (Mich. 2014). Petitioner filed a post-conviction motion for relief from judgment, which was denied. People v. Bentley, No. 2009-0924-FC (Macomb County Cir. Ct. Aug. 13, 2015). The Michigan appellate courts denied Petitioner leave to appeal. People v. Bentley, No. 329464 (Mich. Ct. App. Dec. 21, 2015); lv. den. 884 N.W.2d 792 (Mich. 2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

2

I. The evidence on remand proved that Charles Bentley had an offer to plead guilty to CSC 2nd in return for a dismissal of CSC 1st and was denied the effective assistance of counsel when Mr. Barkovic failed to give him the legal advice necessary to understand the plea offer and how CSC 2nd differed from CSC 1st, gave him mistaken advice, and encouraged him to reject an offer that he would have otherwise accepted. Pursuant to <u>Lafler</u> v. <u>Cooper</u>, Mr. Bentley is entitled to a reoffer to plead guilty to CSC 2nd.

II. The misconduct of jurors Tammy Kotcher and Dragisa Nikolovski, individually and cumulatively, in failing to disclose their involvement as victims of assault and other violent behavior in prior court cases, deprived Mr. Bentley of a fair trial and due process of law.

III. The trial court abused its discretion and violated Mr. Bentley's due process rights by scoring 10 points for OV 4, and Mr. Bentley's attorney was ineffective in not objecting to this scoring and requesting a showing of psychological injury attributable to the alleged incident.

IV. Newly discovered evidence requires that the trial court reverse defendant's conviction or hold an evidentiary hearing for a new trial.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### III. DISCUSSION

**A. Claim # 1. The ineffective assistance of counsel claim.**

Petitioner alleges that he was denied the effective assistance of counsel when counsel failed to give him legal advice necessary to understand the plea offer, failed to explain how CSC-2 differed from CSC-1, and encouraged him to reject an offer that he otherwise would have accepted.

4

A defendant is required to satisfy a two-prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. Id. Stated differently, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. Id. To demonstrate prejudice, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, 562 U.S. at 101. Indeed, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123 (citing Yarborough v. Alvarado, 541 U.S. at

664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner. Id. This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 562 U.S. at 101. "Surmounting Strickland's high bar is never an easy task." Id. at 105 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).

The Sixth Amendment right to counsel also extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 163 (2012); Missouri v. Frye, 566 U.S. 134, 143-44 (2012). A criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." Lafler, 566 U.S. at 162 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. Id. at 164.

> The Michigan Court of Appeals rejected Petitioner's claim as follows:
>
> Defendant argues that Barkovic [defense counsel] failed to adequately explain the ramifications of pleading guilty to second-degree CSC, a compromise first proposed by the trial court and to which the assistant prosecutor, Kathleen Beard, signaled amenability pending approval from her office. But defendant cannot demonstrate that Barkovic's performance surrounding these talks was deficient because the weight of the evidence, excluding the self-serving affidavits of defendant and members of his family, indicates that any conversation concerning the possibility of pleading guilty to second-degree CSC would have been in vain.

6

> The prosecutor's explanation to the trial court, two months before trial commenced, that defendant "has always maintained his innocence in this matter and ... wasn't interested in any plea offer" suggests that no plea-related conversation had been sought since the day of defendant's arrest, about eight months before that pretrial hearing. After this Court granted defendant's motion to remand for an evidentiary hearing on this and other issues, Beard [the assistant prosecutor] and Barkovic each testified that, in their minds, no offer existed. Beard said that there was no point during her involvement with this case at which defendant did not "maintain[ ] his innocence," and that she was "willing to go seek [a deviation] if they were asking me to seek it," but "[i]t was never asked of [her]."

People v. Bentley, 2013 WL 5857796, at *4.

The Michigan Court of Appeals further found that Petitioner could not establish a factual basis for a plea based on the charged offenses as follows:

> The relevant counterfactual question is whether it is reasonably probable that defendant would have accepted a plea offer had Barkovic performed effectively. Assuming, for the limited purpose of answering this question, that an offer existed, and Barkovic fully explained the consequences of accepting and rejecting the offer, the likelihood that defendant would have accepted it is slight because his position at the time of the pretrial hearing was that he had never so much as touched the complainant inappropriately. His family believed him, taking the position that the complainant falsely accused him in retaliation for his recommending that she be placed at the Juvenile Justice Center of Macomb after the fight between the complainant and her grandmother, and recommended against pursuing a plea offer because they were confident in his innocence. Defendant has denied the January 2008 allegations for nearly five years, and only in the week preceding an evidentiary hearing he requested in the course of seeking a lesser sentence did he concede a completely unrelated sexual touching. He can show neither a reasonable probability that he would have accepted a plea offer had one been offered, nor that the prosecution would have agreed to allow him to plead guilty to an unreported, two-year-old instance of second-degree CSC far less severe than the ones for which he was charged, while continuing to deny responsibility for the latter crimes.
>
> Defendant's suspect timing in admitting to this new offense leads into the second requirement he must show under Lafler, which is that there is a reasonable probability that the court would have accepted the terms of the plea offer. Lafler, slip op at 5. "A factual basis to support a plea exists if an inculpatory inference can be drawn from what the defendant has admitted." People v. Fonville, 291 Mich.App 363, 377; 804 NW2d 878 (2011). It is not necessarily probable that the trial court would have found a factual basis for defendant's pleading guilty to second-degree CSC based on the 2007 touching. Though a guilty plea may be based on "the offense charged or the offense to which the defendant is pleading," MCR 6.302(D)(1); People v. Watkins, 468 Mich. 233, 238; 661 NW2d 553 (2003), the

7

> trial court would rightly have wondered why defendant, who insisted he did not sexually touch or penetrate the complainant in his pickup truck on January 13 or 14, 2008, would have admitted to a second, uncharged instance of second-degree CSC instead of pleading not guilty and seeking vindication at trial or pleading nolo contendere.

Id. at *6.

Petitioner consistently maintained his innocence. Both trial counsel and the prosecutor testified that in their minds, no offer existed. Id. The trial court judge advised Petitioner of the penalties of each of the offenses at the time of his preliminary examination. 2/26/2009 Tr., Ex. 2 to Rule 5 Materials, at 3-4 (Dkt. 6-2). Following the pretrial hearing, Petitioner denied committing the three charged offenses. Petitioner waited until the time of the evidentiary hearing to admit that he "touched [the complainant's] butt over her clothing" "[o]nce" in "[a]pproximately November of 2007," however, Petitioner was not charged for that incident and continued to deny responsibility for the January 2008 allegations as late as August 2012. Id. Because Petitioner cannot show that he would have accepted a plea offer but for trial counsel's ineffective assistance and that the trial court would have accepted that offer, the Michigan Court of Appeals reasonably found that he suffered no cognizable prejudice on this issue. Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The juror bias claim.**

Petitioner next alleges that the failure of two jurors to disclose their histories of assaultive incidents during voir dire denied him of a fair trial and the trial court abused its discretion when it denied his motion for a new trial.

In order to obtain a new trial because a juror has given a mistaken response to a question on voir dire, the litigant must demonstrate first, that the juror failed to answer honestly a material question on voir dire, and secondly, show that the correct response would have provided a valid

basis for a challenge for cause. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556 (1984). The Supreme Court noted that to invalidate a trial because of a juror's mistaken but honest response to a voir dire question "is to insist on something closer to perfection than our judicial system can be expected to give." McDonough, 464 U.S. at 555. Furthermore, although the motives for concealing information by jurors may vary, "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." Id. at 556.

A juror may conceal information in a non-deliberate fashion, through an "honest, but mistaken, response." United States v. Solorio, 337 F.3d 580, 595 (6th Cir. 2003) (quoting Zerka v. Green, 49 F.3d 1181, 1186, n.7 (6th Cir. 1995)). However, if information is not deliberately concealed by a juror, bias may not be inferred. Instead, the defendant must show actual bias on the part of the juror to obtain a new trial. Solorio, 337 F.3d at 595-596.

The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of credibility. Gall v. Parker, 231 F.3d 265, 308 (6th Cir. 2000) (citing Patton v. Yount, 467 U.S. 1025, 1038 (1984)). A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence. Gall v. Parker, 231 F.3d at 334. Here, the state trial judge determined that both Nikolovski and Kotcher had been fair and impartial jurors, which is presumed correct in the absence of any clear and convincing evidence to the contrary.

The Michigan Court of Appeals reasonably found that the information withheld by the two jurors was not intentionally withheld and did not affect their ability to be impartial as follows:

> Juror Dragisa Nikolovski failed to disclose information that he should have disclosed. Questions from the trial court and defense counsel offered him opportunities to disclose the fact that he was threatened and physically assaulted, and he knew that the questions that were asked of other potential jurors applied to him. He acknowledged that Barkovic asked of the venire, "[H]ave any of you been the victims of serious crimes or assaultive crimes?" He understood that this

9

question, and the trial court's questions, referred not only to sexual assaults, but also to any crime. He admitted that he did not "say one word" about being involved in any kind of crime, whether as a victim or perpetrator. Juror Tammy Kotcher failed to disclose that she had been the victim of two incidents of domestic violence resulting in a personal protection order and criminal charges being filed against her husband, despite having been asked by Barkovic whether she had been "the victim of any crime(s)."

Defendant is not entitled to relief on the basis of juror misconduct, however, because he has not demonstrated that Nikolovski's or Kotcher's omissions "affect[ed] the impartiality of the jury," Strand, 213 Mich.App at 104, by rebutting the presumption that jurors are impartial, Miller, 482 Mich. at 550. Nikolovski testified that he did not intentionally withhold information from the court concerning a personal protection order, but did not mention it because it was "just something that happened while [he] was in college" and it "never occurred to [him] to bring it up." He said, during voir dire, that he understood the presumption of innocence to which defendant was entitled. Kotcher testified that she was not sexually assaulted, does not consider herself to be a victim, and thought that the voir dire questioning concerned only sexual assault. The trial court was satisfied that Nikolovski did not make a deliberate misrepresentation to the Court, and that Kotcher's testimony "indicate[d] she believed she was impartial, that her past adverse relations with her ex-husband had no bearing on her views of the alleged criminal activity in front of her, and that she could make an unbiased, correct decision." Because defendant introduced no evidence that suggested impartiality on the part of either juror, the trial court's denial of defendant's motion for a new trial was not "outside [the] principled range of outcomes," and, therefore, was not an abuse of discretion. Miller, 482 Mich. at 544.

People v. Bentley, 2013 WL 5857796 at *8.

Petitioner is not entitled to habeas relief on his juror bias claim, because he has failed to show that Nikolovski and Kotcher were actually biased against him. See Dennis v. Mitchell, 354 F.3d 511, 521 (6th Cir. 2003) (trial court's failure to remove juror from panel after learning that she was victim of sexual abuse did not deprive capital murder defendant of fair trial, and thus did not warrant federal habeas relief; although juror failed to disclose during voir dire that she had been victim of violent crime, there was no evidence that juror was intentionally deceitful and trial court questioned juror after discovering that she had been sexual abuse victim and found her to be impartial). More specifically, Petitioner has failed to show that either juror could have been

challenged for cause had they answered the voir dire questions accurately. See Baker v. Craven, 82 F. App'x 423, 429 (6th Cir. 2003). The state court's finding that Nikolovski and Kotcher were not biased is presumptively correct, and Petitioner has not met his burden of rebutting this presumption by clear and convincing evidence. Id. Petitioner is not entitled to habeas relief on his juror bias claim.

**C. Claim # 3. The sentencing guidelines claim.**

Petitioner alleges that Offense Variable 4 of the Michigan Sentencing Guidelines was misscored by the trial court.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. See Tironi v. Birkett, 252 F. App'x 724, 725 (6th Cir. 2007); Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003); McPhail v. Renico, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Errors in the application of state sentencing guidelines cannot independently support habeas relief. See Kissner v. Palmer, 826 F.3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." See Mitchell v. Vasbinder, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." Doyle v. Scutt, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating Petitioner's guideline score would not merit habeas relief. Id. Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would thus not entitle him to habeas relief, because such a departure does not violate any of Petitioner's federal due process rights. Austin v. Jackson, 213 F.3d 298, 301 (6th Cir. 2000).

Petitioner further argues that trial counsel was ineffective by failing to object to the sentencing court's scoring of Offense Variable 4.

When the alleged attorney error involves the failure to object to a violation of state law that does not involve the enforcement of federal constitutional rights or interests, there is no Supreme Court case that prevents a federal court sitting in habeas review of a state court conviction from looking "to whether there is a reasonable probability that the do-over proceeding state law provides would reach a different result." See Hammond v. Hall, 586 F.3d 1289, 1340 (11th Cir. 2009). The trial judge and the Michigan appellate courts rejected Petitioner's sentencing guidelines claim finding there was sufficient evidence to support a score of 10 points for OV 4. People v. Bentley, 2013 WL 5857796, at *9-10. Petitioner is therefore unable to show that he was prejudiced by trial counsel's purported ineffectiveness in failing to challenge the scoring of his sentencing guidelines. See, e.g., Coleman v. Curtin, 425 F. App'x 483, 485 (6th Cir. 2011). If "one is left with pure speculation on whether the outcome of . . . the penalty phase could have been any different," there has been an insufficient showing of prejudice. Baze v. Parker, 371 F.3d 310, 322 (6th Cir. 2004). Because Petitioner has offered no evidence to show that the state trial court judge would have been inclined to impose a lesser sentence or that the Michigan appellate courts were inclined to reverse his sentence, Petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to challenge the scoring of his sentencing guidelines. See Spencer v. Booker, 254 F. App'x 520, 525-26 (6th Cir. 2007). Petitioner is not entitled to relief on his third claim.

### D. Claim # 4. The actual innocence claim.

Petitioner alleges that the trial court erred by denying him a new trial based on newly discovered evidence.

In support of his claim, Petitioner attaches the sworn affidavit of his nephew, Percy Evans Bentley, Jr., dated January 1, 2015, and an affidavit of a person by the name of Dave Todd, dated May 19, 2015, who purports to be Petitioner's brother-in-law. See Pet. at PageID.213-216 (Dkt. 1-1).

Petitioner initially brought this issue before the trial court pursuant to Michigan Court Rule 6.502(G)(2), which provides that a defendant may file a second or subsequent motion for relief from judgement based on a claim of new evidence that was not discovered before the first such motion. Petitioner submits that, in February 2012, his nephew Percy Bentley had a conversation with the victim, in which she stated that she had lied and was not sexually assaulted by Petitioner. She claims that she lied to the police and to the court. Petitioner's nephew further related to Petitioner that the victim said she felt bad that she had put Petitioner in prison and wanted to take back the statements she had lied about. Petitioner also has an affidavit from his brother-in-law, David Todd, who claims he spent the afternoon and evening with Petitioner and his family and basically indicates that "There is no way in hell, Charles did the horrible things, the court system is accusing him of. My brother is an amazing personan (sic) who would never hurt anyone." Todd also claimed that Petitioner was an "innocent man."

In rejecting this claim, the trial court found there were other witnesses who testified at trial against Petitioner:

> In the pending case, other witnesses, Patricia Henderson, the victim's mother, testified that although her daughter was a perpetual liar, she did believe she was telling the truth in this instance. Ms. Henderson made a police report and assisted the police by finding the clothes the victim told her she had been wearing on the night of the assault, and turning them over to the police for process and examination by the Michigan State Police. The victim had told her cousin Cheyann about the several times defendant was alleged to have touched her inappropriately and following the assault, she told Cheyann, who in turn, told her own mother about it who then relayed the information to Ms. Henderson. Ms. Henderson then confronted her daughter about her allegations.

13

> In addition, when the victim was in the juvenile detention center for several months following the assault, she received addiction counseling, and informed her counselor, Jennifer Cole, about the assault.

People v. Bentley, No. 2009-0924-FC, *4 (Macomb County Cir. Ct. Aug. 13, 2015).

In Herrera v. Collins, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. Id., see also McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. See Cress v. Palmer, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

In addition, the Supreme Court's subsequent decision in House v. Bell, 547 U.S. 518 (2006) would not affect this Court's adjudication of Petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. Id. at 554-55. Although the Supreme Court in House noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," Id. (quoting Herrera, 506 U.S. at 417). The Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context. Petitioner is, therefore, not entitled to relief for his fourth claim under available Supreme Court precedent. See Wright v. Stegall, 247 F. App'x 709, 711 (6th Cir. 2007).

In any event, a long-delayed affidavit like that of Petitioner's nephew, Percy Evans Bentley, Jr., which seeks to exonerate Petitioner, is "treated with a fair degree of skepticism." Herrera v. Collins, 506 U.S. at 423. Recanting affidavits and witnesses are viewed with "extreme suspicion." United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir. 1991); see also Byrd v. Collins, 209 F.3d 486, 508, n.16 (6th Cir. 2000). In addition, "the skepticism with which a court examines such an affidavit is only heightened when the recanting witness is a family member and the witness may have feelings of guilt or may be influenced by family members seeking to change the witness's story." U.S. v. Coker, 23 F. App'x 411, 412 (6th Cir. 2001). Skepticism about recantations is especially applicable in cases of child sexual abuse, where recantation is a recurring phenomenon, such as where family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story. United States v. Miner, 131 F.3d 1271, 1273-1274 (8th Cir. 1997) (quoting United States v. Provost, 969 F.2d 617, 621 (8th Cir. 1992)).

In light of the extensive testimony given at trial by the victim and the other witnesses, the affidavits produced in support of Petitioner's claim of actual innocence are suspect. Furthermore, there is no Supreme Court president to grant habeas relief based on newly discovered evidence. Petitioner is not entitled to relief on his fourth claim.

## IV. CONCLUSION

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the

district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; See also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this

Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id.

## V. ORDER

IT IS ORDERED that the petition for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that Petitioner is granted leave to appeal in forma pauperis.

SO ORDERED.

Dated: October 25, 2018  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 25, 2018.

s/Karri Sandusky
Case Manager